## In re BENNETT ENTERPRISES, INC. d/b/a Ben's Lounge, Debtor.

### Bankruptcy No. 84-1347-JG.

United States Bankruptcy Court, D. Massachusetts.

March 25, 1986.

Harold B. Murphy, Trustee.

Leonard M. Goldberg, for Massachusetts Dept. of Revenue.

Horace J. Cammack, Jr., for Small Business Admin.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

This matter comes before the Court on the Objection of The Commonwealth of Massachusetts, Department of Revenue ("the Commonwealth") to the trustee's proposed final distribution of estate funds to The United States Small Business Administration ("SBA") on account of its claim arising out of a 1970 loan secured by an assignment of the debtor's liquor license. The Commonwealth asserts that its claims for tax liens perfected in 1982 have priority over the SBA's claims, asserting that the SBA's security interest is invalid because a liquor license could not be pledged under Massachusetts law prior to 1976.

A hearing was held on the trustee's final account and the Commonwealth's objection. The parties agreed to all relevant facts and submitted memoranda of law. The Court makes the following findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

In May of 1970 the SBA loaned Bennett Enterprises, Inc. $25,000. The debtor gave the SBA a Note in the original principal amount of $25,000 bearing interest at the annual rate of 6⅝ per cent. As security for the loan, the SBA took an Assignment of a liquor license from the debtor. The SBA properly filed financing statements

with the City of Boston and the Secretary of State. The SBA filed continuation statements in 1975, 1980 and 1985. The current balance owed to the SBA is $19,875.28. The Commonwealth asserts secured claims in the sum of $43,353.06 based on tax liens filed with the City of Boston in January 1982 for taxes owed for 1977 through 1983.

The debtor filed a voluntary chapter 11 petition on October 17, 1984 which was converted to chapter 7 on February 14, 1985. The trustee has liquidated all assets of the estate which consists of $51,750.

The issue presented is whether the SBA has a valid secured claim by reason of the assignment in 1970 of the debtor's liquor license as collateral. Resolution of this issue requires a determination of whether a liquor license could be the subject of a security interest under Massachusetts law as it existed prior to 1976. The Commonwealth argues that since the applicable statute, M.G.L. c. 138 § 23 (1973) contained no provision allowing a debtor to pledge a liquor license to secure a loan and that since the debtor had no property right in the license, the pledge was not valid from the outset.[1]

Prior to 1976, M.G.L. c. 138 § 23 neither authorized nor prohibited the pledge on assignment of a liquor license as collateral for a loan. *See* M.G.L. c. 138 § 23 (1973) (amended 1982). In 1976 the statute was amended to provide that a liquor license could be the subject of a pledge with the approval of the local licensing authority and the state Alcohol and Beverage Control Commission. M.G.L. c. 138 § 23 (1976).

■ It is frequently stated that a licensee has no property rights in a liquor license vis-a-vis the licensing authority. *E.g., In re Wible*, 42 B.R. 622, 624 (Bankr. D.Mass.1984). "It is a nontransferable personal privilege, revocable at pleasure, and conveying no vested interest to the licensee". *Jubinville v. Jubinville*, 313 Mass. 103, 106, 46 N.E.2d 533 (1943). However, as between private parties, the license has been determined to be a valuable asset. *Arrowhead Estates, Inc. v. Boston Licensing Board*, 15 Mass.App. 629, 447 N.E.2d 675 (Mass.App.1983). Therefore, even though a liquor license is revocable by the licensing authorities, it nonetheless is property subject to attachment by the government for taxes, *Arrowhead Estates, Inc. v. Boston Licensing Board, supra* 15 Mass.App. at 631, 447 N.E.2d 675, at 677, and to levy for satisfaction of a judgment. *Springsteen v. The Meadows, Inc.* 534 F.Supp. 504 (D.Mass.1982). Moreover, a liquor license temporarily passes to a decedent's estate. *Jubinville v. Jubinville*, 313 Mass. 103, 46 N.E.2d 533 (1943). Given these attributes, even a pre–1976 liquor license was an asset with pecuniary value. Therefore, the absence of specific language in the former statute giving an owner of a liquor license the power to pledge it as collateral should not be controlling.

■ Prior to 1976 the liquor license statute did not stand alone in governing the relationship between a lender and a borrower who pledged a liquor license as collateral. The Uniform Commercial Code, enacted in Massachusetts in 1958, after the enactment of the liquor control statute in question, broadened previously existing law in making "any personal property" subject to security interests.

"(1) ... [T]his article applies so far as concerns any personal property and fixtures within the jurisdiction of this state."

(A) (to any transaction regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, account and contract rights.

M.G.L. c. 106 § 9–102 (1962).

General intangibles means any personable property (including things in action) other than goods accounts contract

---

1. The Commonwealth does not argue that the SBA's failure to obtain approval for filling continuation statements rendered the security interest invalid.

rights, chattle paper, documents and instruments.

M.G.L. c. 106 § 9–106 (1962).

It is well-settled that a liquor license qualifies as a general intangible within this definition, and may be the subject of security interest. *E.g., Bogus v. American National Bank of Cheyenne, Wyoming,* 401 F.2d 458, 461 (10th Cir.1968); *Glona v. American Guarantee & Liability Ins. Co.,* 379 F.2d 545 (5th Cir.1967); *Gibson v. Alaska ABCD,* 377 F.Supp. 151 (D.Alaska 1974); *Queen of the North, Inc. v. LeGrue,* 582 P.2d 144, 148 (Alaska 1978). Therefore, since the Uniform Commercial Code permitted the creation of a security interest in a license at the time the liquor license was pledged in this case, the UCC overrides any inference that might be drawn from the former liquor license statute's failure to specifically authorize the pledge of a liquor license. The Court rules that a pre–1976 liquor license could be the proper subject of a pledge as collateral.

In the decision of *In re Wible,* 42 B.R. 622 (Bankr.D.Mass.1982), Judge Lawless, interpreting the post–1976 statute, ruled that a secured party's failure to obtain the approval of the liquor authorities renders the security interest voidable by the trustee. In *dicta,* the Court stated the general proposition that a licensee does not have a property right in a license as discussed previously. However, this frequently-cited language did not preclude the pledge of a liquor license as collateral for a loan. It merely described the rights of the holder vis-a-vis the licensing authority and did not relate to its pecuniary value or capacity to serve as collateral. In fact, in a previous decision, Judge Lawless acknowledged that prior to 1976 a creditor may have been able to perfect a security interest in a liquor license under the Uniform Commercial Code. *See In re Marvale Corp.,* Slip Opinion No. 77–2639–L (D.Mass. May 30, 1979) (under amended statute secured party must obtain liquor authority's approval for pledge of liquor license despite compliance with UCC requirements).

For these reasons, the Court rules that the 1970 assignment of the debtor's liquor license to the SBA was valid and the secured claim of the Small Business Administration in the amount of $19,875.28 is allowed. The Objection of the Commonwealth to the Trustee's Final Account is overruled.