**In re DALCON, INC., Debtor.**

**Bankruptcy No. 90–11681–JNG.**

United States Bankruptcy Court, D. Massachusetts.

Oct. 26, 1990.

Lloyd E. Belford, Fall River, Mass., for debtor.

Paul P. Daley, Hale & Dorr, Boston, Mass., for secured party.

## MEMORANDUM

JAMES N. GABRIEL, Chief Judge.

### INTRODUCTION

The issue before the Court is whether Bobby Dee Enterprises, Inc. and Duggan's Liquor Store, Inc. (collectively, "Bobby Dee") have a perfected security interest in a liquor license that is an asset of the Debtor's estate. Bobby Dee filed a motion for relief from stay seeking permission from this Court to exercise its state law rights of foreclosure with respect to the liquor license. The Debtor filed an objection to the motion, claiming that the security interest claimed by Bobby Dee was not properly perfected under state law. If the Debtor is correct, Bobby Dee's motion must be denied.

### FACTS

The facts are not disputed. The Debtor operated a business known as Bob's Food Mart in Stoughton, Massachusetts. The Debtor purchased the business from Bobby Dee pursuant to a Purchase and Sale Agreement dated June 22, 1987. The Debtor executed a Promissory Note in favor of Bobby Dee dated August 31, 1987 in the original principal amount of $550,000. Additionally, the Debtor executed a Security Agreement dated August 31, 1987. The Security Agreement granted Bobby Dee a security interest in all the Debtor's assets, including the liquor license. However, Bobby Dee did not file UCC financing statements in Stoughton or with the Commonwealth of Massachusetts. However, the Debtor did obtain approval for the transfer and pledge of the liquor license from the Town of Stoughton and from the Alcoholic Beverages Control Commission of the Commonwealth of Massachusetts. Since the Debtor has been in default under the Note and Security Agreement since May of this year, and its business has failed, Bobby Dee must be granted relief from stay if compliance with M.G.L. ch. 138, § 23 regarding the transfer and pledge of liquor licenses is sufficient to perfect its security interest in the liquor license.

### DISCUSSION

Bobby Dee asserts that it duly perfected its interest in the liquor license through compliance with M.G.L. ch. 138 § 23, (West 1974 & Supp.1990), a statute that, in its view, preempts the Uniform Commercial Code as enacted in Massachusetts. It also argues that § 9–104(e) of the UCC, M.G.L. ch. 106, § 9–104(e) (West 1990) creates an exception to the UCC's filing requirements for section 23. The Debtor disagrees.

The Uniform Commercial Code enacted in Massachusetts provides in relevant part that "[e]xcept as otherwise provided in section 9–104 on excluded transactions, this Article applies (a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper or accounts...." M.G.L. ch. 106, § 9–102(1)(a) (West 1990). In *In re Bennett Enterprises, Inc.*, 58 B.R. 918 (Bankr.D.Mass.1986), this Court, referring to M.G.L. ch. 106, § 9–106 which defines a general intangible as "any personal property, including things in action, other than goods, accounts, chattel paper, documents,

instruments, and money ...," stated that "[i]t is well settled that a liquor license qualifies as a general intangible within this definition, and may be the subject of [a] security interest." 58 B.R. at 920.

Section 104 of the Uniform Commercial Code identifies a number of exceptions to the broad coverage of transaction specified in section 9–102. In particular, section 9–104(e) of chapter 106 provides that "[t]his Article does not apply ... (e) to a security interest created or granted by a government or governmental subdivision or agency to the extent that the creation, validity, enforceability, perfection or priority of such security interest is expressly governed by any other general or special law." M.G.L. ch. 106, § 9–104(e) (West 1990). In short, if section 9–104(e) applies to the transaction in question, Bobby Dee would be excused from complying with Article 9 of the UCC.

The Massachusetts liquor license statute was amended in 1976 to specifically authorize licensees to pledge their licenses. It provides in relevant part that "[a]ny license granted under the provisions of this chapter may be pledged by the licensee for a loan, provided approval of such loan and pledge is given by the local licensing authority and the commission." M.G.L. ch. 138, § 23 (West 1974 & Supp.1990). In *In re Bennett Enterprises, Inc.*, 58 B.R. 918 (Bankr.D.Mass.1986), this Court held that the pledge of a liquor license prior to the 1976 amendment of Chapter 138, § 23 was valid. The court stated:

[S]ince the Uniform Commercial Code permitted the creation of a security interest in a license at the time the liquor license was pledged in this case, the UCC overrides any inference that may be drawn from the former liquor license statute's failure to specifically authorize the pledge of a liquor license.

58 B.R. at 920.

In *In re Wible*, 42 B.R. 622 (Bankr.D. Mass.1984), the court considered the effect of the debtor's failure to obtain the approval of the Marlboro Licensing Board and the Alcoholic Beverage Control Commission for the debtor's pledge of the liquor license, where the debtor had complied with UCC's requirement to file financing statements with the town clerk of Marlboro and the Secretary of State. The case was decided after the 1976 amendment to M.G.L. ch. 138, § 23. The court in *Wible* applied the same reasoning it used in *In re Marvalle Corporation*, No. 77–2639–L, slip op. (Bankr.D.Mass. May 30, 1979), a case in which the alleged secured creditor had perfected his security interest in accordance with Article 9 of the Uniform Commercial Code and had obtained approval from the town and the Alcoholic Beverage Control Commission for the *transfer* but not the *pledge* of the liquor license. The Court stated:

'Interpreting the 1976 amendment as a [sic] exception to the general policy that a licensee has no property rights in the license, it is only by virtue of the amended statute that Marvalle's interest in the collateral was capable of being validly pledged. Even if that capability did exist previously, a condition of approval was imposed by the amended statute and must be satisfied in addition to the requirements of U.C.C. Article 9 ....'

*In re Wible*, 42 B.R. at 625, quoting *In re Marvalle Corporation*, slip op. at 4–5.

In *Marvalle* and *Wible*, the secured parties failed to comply with section 23, although they complied with the requirements of Article 9 of the UCC to perfect their security interests. In the instant case, Bobby Dee failed to comply with the filing requirements of Article 9, although it complied with section 23. In order to determine whether compliance with section 23 of chapter 138 is sufficient to perfect Bobby Dee's security interest, the Court first must look to M.G.L. ch. 106, § 9–104(e).

Bobby Dee argues that section 23 prescribes the method of obtaining a security interest in a liquor license and that the government's decision to approve or disapprove the pledge results in the existence or nonexistence of a perfected security interest. Accordingly, Bobby Dee argues that the government's actions under section 23 led to the perfection of the security interest in the liquor license and that that action

falls within the exception to Article 9–102(1)(a) provided for in M.G.L. ch. 106, § 9–104(e).

■■■ An analysis of section 9–104(e) must begin with the language of the statute, in particular the words "a security interest created or granted by a government or governmental subdivision or agency...." Although Bobby Dee attempts to obfuscate the meaning of this language, it is clear to the Court that the language does not apply to the security interest created or granted by Bobby Dee on August 31, 1987. Even if the Court were to view the plain meaning of these words as a " 'pernicious oversimplification,' " *see Pennsylvania Department of Public Welfare v. Davenport,* ── U.S. ──, ──, 110 S.Ct. 2126, 2134, 109 L.Ed.2d 588 (1990) (quoting Justice Frankfurter in *U.S. v. Monia,* 317 U.S. 424, 431, 63 S.Ct. 409, 412, 87 L.Ed. 376 (1943) (dissenting opinion), the official reasons for the change to Massachusetts' version of the UCC states: "A new paragraph (e) has been added to make clear that this article does not apply to security interests created by *governmental debtors.*" (emphasis supplied). Likewise, the comment to the revision provides:

> Certain governmental borrowings include collateral in the form of assignments of water, electricity or sewer charges, rents on dormitories or industrial buildings, tools, etc. Since these assignments are usually governed by special provisions of law, these governmental transfers are excluded from this Article.

Thus, the Court finds that the exemption is inapplicable and, in the absence of an absolute preemption of the UCC by section 23 of chapter 138, the transaction in question is covered by the provisions of Article 9, and filings with the town clerk and the Secretary of State were necessary to perfect Bobby Dee's interest.

Section 23 does not expressly govern perfection of security interests in liquor licenses. Indeed, it doesn't even mention perfection of security interests. Accordingly, the Court concludes that section 23 does not preempt the UCC. Rather section 23 appears, in effect, to establish a condition precedent to perfection under Article 9.

This conclusion comports with both the intention of chapter 138, section 23 and the UCC. Section 23, which is part of a comprehensive legislative scheme governing, among other things, licensing, sale, manufacture, pricing and possession of alcoholic liquors is designed "to serve the public need and ... to provide ... an adequate number of places at which the public may obtain, in the manner and for the kind of use indicated, the different sorts of beverages for the sale of which provision is made." M.G.L. ch. 138, § 23 (West 1974 & Supp.1990). In contrast, "notice filing" under the UCC is designed to protect security interests and to give subsequent potential creditors and other interested persons information and procedures adequate to enable them to protect their rights.

■■■ The Court's conclusion is buttressed by a fundamental principal of statutory construction: where statutes do not necessarily conflict they should be construed to give reasonable effect to both unless there is some positive repugnance between them. *See County Commissioners of Middlesex County v. Superior Court,* 371 Mass. 456, 460, 358 N.E.2d 443 (1976) ("Statutes which do not necessarily conflict should be construed to have consistent directives so that both may be given effect.") Here, the provisions of the Uniform Commercial Code regarding perfection of security interests in a variety of forms of personalty, including general intangibles such as liquor licenses, is easily reconciled with section 23's requirement that local officials approve the transfer and pledge of liquor licenses. There simply does not appear to the Court to be any repugnance between the two statutes and their comprehensive purposes. The Court has not been given and can see no compelling reason why the UCC and section 23 should not be construed to give effect to both. This is particularly true since there is no indication of any legislative intent either for section 23 to preempt the UCC or for liquor licenses to be exempt from Article 9, especially since section 9–104(e) of the UCC was re-

written in 1979, after the 1976 amendment to section 23 of chapter 138.

In accordance with the forgoing, the Court hereby denies the motion of Bobby Dee for relief from stay.